UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                       :

ANNE C. DAUB,
                                                      :

                    Plaintiff,                        03 Civ. 4402 (GEL) (DF)
                                                      :

    -against-                               **REPORT AND**
                                                      :      **RECOMMENDATION**

THE GOVERNMENT OF THE PEOPLE'S
REPUBLIC OF CHINA and THE CONSULATE  :
GENERAL OF CHINA IN NEW YORK CITY,
                                                      :

                    Defendants.
---------------------------------------------------------------X

**TO THE HONORABLE GERARD E. LYNCH, U.S.D.J.:**

## INTRODUCTION

       Plaintiff Ann C. Daub ("Plaintiff") commenced this action against the Government of the People's Republic of China ("China") and the Consulate General of China in New York City (the "Consulate") (collectively, "Defendants") for personal injuries she suffered when she fell over steel beams negligently stacked in front of the entrance to the Consulate.

       On November 9, 2006, the Court (Lynch, J.) granted a default judgment against Defendants and referred the matter to me for the purpose of conducting a damages inquest. For the reasons that follow, I recommend that Plaintiff be awarded damages, as calculated below, on the default judgment against Defendants.

## BACKGROUND

A.  **Plaintiff's Injury**

For the convenience of the reader, the relevant facts, as set forth in this Court's previous Report and Recommendation, are largely repeated here, with the addition of certain facts regarding Plaintiff's surgical treatment for her injury.[1]

Plaintiff was born on July 16, 1931. (Affidavit of Ann C. Daub, sworn to Feb. 12, 2005 ("2/12/05 Daub Aff."), at 1, attached to Proposed Findings of Fact and Conclusions of Law, dated Feb. 17, 2005 ("Proposed Findings") (Dkt. 13).) On March 8, 2002, at the age of 70, Plaintiff tripped over one of two steel beams that had been left on the sidewalk outside the Consulate, landing on her left knee. (*See* Complaint, dated June 17, 2003 ("Compl.") (Dkt. 1), ¶¶ 24-25; Proposed Findings ¶ 1; 2/12/05 Daub Aff. at 1; Affidavit of Merit of Ann C. Daub, sworn to Oct. 21, 2004 ("10/21/04 Daub Aff."), at 1, attached to Order to Show Cause, issued Oct. 13, 2006 ("10/13/06 Show Cause Order") (Dkt. 30).) Plaintiff, a New Jersey resident at the time, was taken to the emergency room at the Pascack Valley Hospital in Westwood, New Jersey, where she was diagnosed with a fractured left patella and her knee was immobilized. (*See* Proposed Findings ¶ 2; 2/12/05 Daub Aff. at 1; Affidavit of Dr. Irving M. Etkind, sworn to Feb. 10, 2005 ("Etkind Aff."), at 2, attached to Proposed

---

[1] As noted below, this is the second time this matter has been referred to me to consider whether Plaintiff should be awarded damages. Plaintiff originally submitted her Proposed Findings and supporting materials to this Court in 2005, and she continues to rely on the same materials in connection with her renewed application for damages. (*See* Letter of Steven E. Millon, dated Dec. 18, 2006 ("12/18/06 Millon Letter").)

Findings.)  Two days later, she returned to the emergency room, complaining of pain and swelling in her knee.  (*See* Proposed Finding ¶ 3; 2/12/05 Daub Aff. at 1; Etkind Aff. at 2.)  On March 15, 2002, Plaintiff was admitted to Englewood Hospital for "open reduction and internal fixation" surgery on her left patella.  (10/13/06 Show Cause Order at 2; *see also* Proposed Findings ¶ 4; 2/12/05 Daub Aff. at 1; Etkind Aff. at 2.)  On March 20, 2002, Dr. Jonathan Scherl performed the surgery, which consisted of open treatment of the left patella with fixation maintained by the use of "two K-wires and a tension band."  (Proposed Findings ¶ 4; 2/12/05 Daub Aff. at 1; Etkind Aff. at 2.)  On March 25, 2002, after 10 days in the hospital, Plaintiff was transferred to the Kessler Rehabilitation Institute, where she remained until April 6, 2002.  (*See* Proposed Findings ¶ 5; 2/12/05 Daub Aff. at 2; Etkind Aff. at 2.)

In the aftermath of her surgery, Plaintiff suffered a series of complications stemming from her injury, requiring her to make numerous visits to doctors and hospitals.  The knee immobilizer she had been wearing on her left leg prior to her surgery had caused a blister on the top of her left foot, which subsequently developed into a wound and became infected.  (*See* Proposed Findings ¶ 6; 2/12/05 Daub Aff. at 2; Etkind Aff. at 3.)  Plaintiff received wound therapy, including an attempted graft of artificial skin over the site of the wound, but the wound did not heal until September 2002, after Plaintiff underwent further treatment during a one-week stay at Pascack Valley Hospital.  (*See* Proposed Findings ¶¶ 7-8; 2/12/05 Daub Aff. at 2; Etkind Aff. at 3.)  On December 13, 2002, Plaintiff had surgery to remove the hardware in her left knee. (*See* Proposed Findings ¶ 9; 2/12/05 Daub Aff. at 3; Etkind Aff. at 3.)  The surgery was performed by Dr. Scherl at Englewood Hospital.  (*See* Proposed Findings ¶ 9; Daub Aff. at 2.)

Following the surgery, x-rays revealed that Plaintiff was developing post-traumatic arthritis in her left knee. (*See* Proposed Findings ¶ 10; 2/12/05 Daub Aff. at 3; Etkind Aff. at 4.)

Plaintiff maintains that she has had persistent pain in her left knee, foot, and ankle ever since her injury. (*See* Proposed Findings ¶¶ 3, 8-11, 14-16; 2/12/05 Daub Aff. at 1-3; Etkind Aff. at 3, 5.) As a result, she cannot wear regular shoes and has difficulty walking, standing, and bending her left leg. (*See* Proposed Findings ¶¶ 11, 17, 20; 2/12/05 Daub Aff. at 3; Etkind Aff. at 4-5.) Because of her injury, Plaintiff does not socialize as much as she used to, and will not go places that require too much walking. (*See* Proposed Findings ¶ 20; 2/12/05 Daub Aff. at 3.) Plaintiff's condition is permanent and progressive, and will likely require kneecap removal or replacement surgery in the future. (*See* Proposed Findings ¶ 21; 2/12/05 Daub Aff. at 3; Etkind Aff. at 5.)

### B.  Litigation History

On June 18, 2003, Plaintiff initiated this action against China and the Consulate (*See* Compl.) After some initial difficulty effectuating service (*see* Report and Recommendation, dated June, 22 2005 ("6/22/05 R&R") (Dkt. 18), at 4-8, 19-27, adopted by Order of the Hon. Gerard E. Lynch, dated July 8, 2005 (Dkt. 20)), Plaintiff properly served Defendants with the Summons and Complaint on June 1, 2006 (*see* Affidavit for Judgment by Default of Steven E. Millon, sworn to Aug. 16, 2006 ("8/16/06 Millon Aff."), at 3, attached to 10/13/06 Show Cause Order; *see also* Transcript of Proceedings, held on Nov. 9, 2006 before the Hon. Gerard E. Lynch ("11/9/06 Transcript of Proceedings") (Dkt. 35), at 4-5 (confirming propriety of service)). Pursuant to the terms of the Foreign Sovereign Immunity Act ("FSIA"), Plaintiff allowed for a period of 60 days following the service of the Summons and Complaint

(within which the defendants were permitted to interpose an Answer thereto) (*see* 8/16/06 Millon Aff. at 3-5), before moving by proposed Order to Show Cause and pursuant to 28 U.S.C. § 1608(e) and Fed. R. Civ. P. 55(b)(2) for a default judgment on liability and for a damages inquest (*see* 10/13/06 Show Cause Order). Plaintiff supported her motion with sworn affidavits on the issues of liability and the validity of Plaintiff's service. (*See* 8/16/06 Millon Aff.; 10/21/04 Daub Aff.; Affidavit of Service on China of Steven E. Millon, sworn to Aug. 9, 2006, attached to 10/13/06 Show Cause Order; Affidavit of Service on Consulate of Steven E. Millon, sworn to Aug. 9, 2006, attached to 10/13/06 Show Cause Order.)

On November 9, 2006, the court held a hearing on Plaintiff's motion. (*See* 11/9/06 Transcript of Proceedings.) Defendants failed to appear at or prior to the hearing and, pursuant to Rule 5(B)(2) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1608(e), Judge Lynch directed that Plaintiff be granted judgment on liability. (*See* 11/9/06 Transcript of Proceedings at 5; *see also* Order of the Hon. Gerard E. Lynch, dated May 11, 2007 (Dkt. 36).) Thereafter, Judge Lynch referred the matter to me for the purpose of conducting an inquest concerning Plaintiff's alleged damages. (*See* Order of Reference to a Magistrate Judge, dated Nov. 9, 2006 (Dkt. 31); 11/9/06 Transcript of Proceedings at 5.)

I issued a Scheduling Order with respect to the damages inquest, requiring Plaintiff to serve and file Proposed Findings of Fact and Conclusions of Law no later than December 22, 2006. (*See* Scheduling Order for Damages Inquest, dated Nov. 22, 2006 (Dkt. 34).) In that Order, I cautioned Defendants that if, by January 22, 2007, they did not respond to Plaintiff's submissions or contact my chambers in writing to request an in-court hearing, it would be my intention to issue a report and recommendation on the basis of Plaintiff's written submissions

alone. (*See id.*)  On December 19, 2006, Plaintiff resubmitted her Proposed Findings with a sworn affidavit averring to the validity of Plaintiff's service.  (*See* 12/18/06 Millon Letter; Affirmation of Paulette McFarlane, sworn to Dec. 18, 2006, attached to 12/18/06 Millon Letter.[2])  To date, Defendants have filed no response to Plaintiff's submissions, nor have they contacted my chambers to request a hearing.  I therefore make my recommendation based solely on Plaintiff's submissions.

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. The Court's Source of Subject Matter Jurisdiction Derives from the Tort Exception to the FSIA.

The FSIA, 28 U.S.C. §§ 1330, 1603-11, provides this Court's sole source of subject matter jurisdiction over claims against a foreign state.  *Argentine Repub. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  The Act confers immunity on "foreign states," preventing the Court from exercising subject matter jurisdiction, unless one of the Act's enumerated exceptions to immunity applies.  28 U.S.C. §§ 1604-07; *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 485 n.5 (1983).  The Act also confers immunity on an "agency or instrumentality" of a foreign state, treating such an entity as a separate "foreign state" for the purpose of determining whether it is entitled to immunity.  *See* 28 U.S.C. § 1603(a)-(b) (defining "foreign state," for immunity purposes, as either a foreign state, a foreign state's political subdivision, or a foreign state's agency or instrumentality that is a "separate legal person" from the foreign state).  For a personal injury case such as this one, however, the FSIA contains an exception to immunity that gives the Court subject matter jurisdiction over actions

---

[2] *See supra* n.1.

arising out of certain torts committed by the foreign state or its agents in the United States. *See* 28 U.S.C. § 1605(a)(5). In particular, the Act withdraws immunity for tort claims in which money damages are sought against a foreign state for personal injury or damage to property, unless the claim is based on the performance of a "discretionary function" or "aris[es] out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id*. Neither of these two limits on the tort exception apply here. (*See* 6/22/05 R&R at 10-15, 28-30 (discussing the applicability of the FSIA and why neither of the tort exceptions apply in this case).)

        B.      **Plaintiff's Damages Should Be Assessed in Accordance with New York Law.**

At an inquest for damages following default judgment in an ordinary diversity case, federal courts apply the law of the forum in which the court is located. *See Brinks Ltd. v. S. Afr. Airways*, 93 F.3d 1022, 1030 (2d Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); *Gottesman v. Camp N'Vei Ashdod*, No. 00 Civ. 5139 (JSM)(RLE), 2003 U.S. Dist. LEXIS 10429, at *4 (S.D.N.Y. June 11, 2003) (citing *Consorti v. Armstrong World Indus., Inc.*, 103 F.3d 2, 4 (2d Cir. 1995)), *adopted by*, Order of the Hon. John S. Martin, dated July 2, 2003 (Dkt. 27). Similarly, the FSIA provides that "[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity . . . the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 1606. This statutory language has been interpreted to mean that "where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 622 n.11 (1983); *see also Brinks Ltd.*, 93 F.3d at 1030 (holding that in cases

7

where the "FSIA provides the sole basis of federal court jurisdiction . . . state law generally controls . . . ." (citing *Barkanic v. Gen. Admin. Of Civil Aviation of the P.R.C.*, 923 F.2d 957, 959 (2d. Cir. 1991))).  Thus, because the accident in this case took place in New York State, New York law applies.

Under New York law, the purpose of an award of damages is "to restore the injured party, to the extent possible, to the position that would have been occupied had the wrong not occurred."  *McDougal v. Garber*, 73 N.Y.2d 246, 254 (1989).  New York courts have long held that, in a personal injury case, a "plaintiff is entitled to recover 'a sum of money which will justly and fairly compensate the plaintiff for the loss resulting from the injuries sustained.'" *Robinson v. U.S.*, 330 F. Supp. 2d 261, 290 (W.D.N.Y. 2004) (quoting *Kehrli v. City of Utica* 482 N.Y.S.2d 189 (4th Dep't 1984)).  Specifically, a "plaintiff's recovery may include compensation for his or her pain and suffering, both present and future, impairment of physical functions or other disability, loss of time and impairment of earning capacity; and expenses of necessary medical and hospital care and other necessary expenses."  36 N.Y. Jur. 2d Damages § 58; *see also Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1082 (2d Cir. 1988); *McDougal*, 73 N.Y.2d at 251.

## II.     PLAINTIFF'S DAMAGES

### A.     Medical Expenses

Under New York law, "the plaintiff is entitled to recover the amount of his or her reasonable expenditures for medicines, medical services, and attendance, including hospital bills, and for the anticipated expense of medical attendance and nursing which is reasonably certain to

be incurred in the future." 36 N.Y. Jur. 2d Damages § 92.  Plaintiff asserts that her medical bills for treatment of her injury have, to date, totaled $117,857.60.  (*See* Proposed Findings ¶ 25; Affidavit of Steven E. Millon, sworn to Feb. 17, 2005 ("2/17/05 Millon Aff."), at 2, attached to Proposed Findings.)  Specifically, Plaintiff claims to have been charged:  (1) $34,977.18 by Pascack Valley Hospital for initial emergency treatment and subsequent treatment for the staff infection on her left foot; (2) $39,396.50 by Englewood Hospital for services relating to the open repair of her fractured patella; (3) $17,374.74 by Kessler Rehabilitation Institute for post operational rehabilitation services; (4) $21,472.06 by Wellington Regional Medical Center for wound treatment and attempted skin graft; and (5) $4,637.12 by Dr. Scherl for surgeries performed and follow-up medical examinations.  (*See* Proposed Findings ¶ 25; 2/17/05 Millon Aff. at 2.)  After careful review of the record, the court confirms that Plaintiff was charged $17,374.74 by Kessler Rehabilitation Institute and $4,637.12 by Dr. Scherl.  (*See* 2/17/05 Millon Aff., Exs. J, L.)  It appears, however, that Plaintiff has miscalculated the amounts she was charged by Pascack Valley Hospital, Englewood Hospital, and Wellington Regional Medical Center.  Specifically, it appears from the record presented that Plaintiff was actually charged $35,803.42 by Pascack Valley Hospital, $39,501.25 by Englewood Hospital, and $10,745.28 by Wellington Regional Medical Center.[3]  (*See id.*, Exs. H, I, K.)  Based on the documentation in

---

[3] Whereas it appears that Plaintiff's calculations concerning the charges from both Pascack Valley and Englewood Hospital are only slightly incorrect, Plaintiff's calculation of the amount she was charged by Wellington Regional Medical Center appears to have nearly doubled the actual charge.  With respect to her calculations concerning Pascack Valley and Englewood Hospitals, Plaintiff may have made simple mathematical errors in tabulating long lists of itemized charges.  With respect to Plaintiff's calculation of charges from Wellington Regional Medical Center, Plaintiff may have inadvertently added itemized charges together with the amounts set out in the bills as "total charges."  (*See* 2/17/05 Millon Aff., Ex. K.)

the record, I recommend that Plaintiff be awarded $108,061.81 to compensate her for past medical expenses.[4]

Additionally, Plaintiff has presented uncontested evidence that her condition is permanent and progressive, and that it will likely require kneecap removal or replacement surgery in the future.  (*See* Proposed Findings ¶ 21; 2/12/05 Daub Aff. at 3; Etkind Aff. at 5.) Plaintiff has also submitted evidence demonstrating that the future cost of knee removal or knee replacement surgery, including post-operative care and therapy, will approximate $15,000.  (*See* Proposed Findings ¶ 22; Etkind Aff. at 5.)  I find it to be reasonably certain that Plaintiff will incur future medical expenses in the amount of $15,000, and I therefore recommend that Plaintiff be awarded this amount, as well.

### B.    Pain and Suffering

While calculation of strict economic loss, such as past medical expenses, can be fairly straightforward, calculating damages for pain and suffering "is an inherently imprecise and difficult undertaking."  *Aviles v. Q.P.N. Productions, Inc.*, No. 05 Civ. 2830 (CBA)(JMA), 2006 U.S. Dist. LEXIS 63327, at *8 (E.D.N.Y. Sept. 6, 2006).  Nevertheless, it is the Court's responsibility "to ensure 'that the damage award does not exceed that which could be sustained

---

[4] Plaintiff concedes that most of her medical expenses have been already paid for by "Medicare and AARP." (*See* 2/17/05 Millon Aff. at 2.) Nevertheless, she claims that she is entitled to recover these costs. (*Id.*)  Under New York law, in a personal injury action, a plaintiff may not recover from a defendant the cost of medical care that is paid for by a collateral source, such as insurance.  N.Y. C.P.L.R. § 4545(c).  This rule, however, does not apply to payments made by Medicare, or "where the collateral-source payor is entitled by law to a lien against recovery by the plaintiff."  N.Y. C.P.L.R. § 4545, Practice Commentaries at C4545:2.  Here, Plaintiff's medical bills primarily were paid for by Medicare.  (*See* 2/17/05 Millon Aff., Exs. H-L.)  Moreover, Plaintiff's attorney states, in a sworn affidavit, that any damages awarded by the Court for past medical expenses would be subject to a lien by Medicare and AARP.  (*Id.* at 2.)  Accordingly, there would appear to be no basis for reducing Plaintiff's award for past medical damages under New York law.

were the case before the highest court of the state whose substantive law gives rise to the claim.'" *Martello v. Boardwalk Enter., Inc.*, 748 F.2d 740, 750 (2nd Cir. 1984) (quoting *Hassle v. Iowa Pub. Serv. Co.*, 559 F.2d 468, 472 (8th Cir. 1977)). Under New York law, when calculating damages for pain and suffering, "awards approved in similar cases determine what is fair or reasonable compensation." *Aviles*, 2006 U.S. Dist. Lexis 63327, at *8 (citing N.Y. C.P.L.R. § 5501(c)); *see also Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 425 (1996) ("To determine whether an award 'deviates materially from what would be reasonable compensation,' New York state courts look to awards approved in similar cases."). In conducting inquests for damages in personal injury cases, federal courts have consistently applied this comparative approach. *See, e.g.*, *Gottesman*, 2003 U.S. Dist. LEXIS 10429, at *7-*8 (finding that an award of $200,000 was consistent with cases involving young women with similarly fractured ankles).

Plaintiff contends that an award of $375,000 for past pain and suffering and $375,000 for future pain and suffering would be reasonable in her case. (*See* Proposed Findings ¶ 27; 2/17/05 Millon Aff. at 6.) In support of that proposition, Plaintiff has provided the Court with references to damage awards in certain cases that she argues are closely analogous to hers. (2/17/05 Millon Aff. at 3-6; *id.*, Ex. M.) The Court has reviewed these awards, as well as others in cases that the Court has identified through its own survey of recently reported New York jury verdicts. The Court's survey was not meant to be exhaustive, but rather to create the basis for an informed opinion of what constitutes reasonable compensation under the circumstances.

In its own survey, the Court restricted its search to New York State cases: (1) decided within approximately the last 10 years; (2) in which the plaintiff had suffered a fractured patella

11

requiring surgical intervention, typically by open reduction with internal fixation; and (3) in which damages were determined after trial, as opposed to in settlement. Although the damages awards for past pain and suffering ranged, in these cases, from a low of $40,000 to a high of $1 million, most fell within the range of $175,000 to $325,000, with $250,000 being the most commonly awarded amount. In order to avoid an aberrational result, the Court eliminated from its consideration three cases that appeared to deviate from the norm: two in which the awards were unusually low, and one in which the award was unusually high.[5]

The remaining eight cases that the Court considered include: *Hoerner v. Chrysler Fin. Co.*, 21 A.D.3d 1254, 2005 N.Y. Slip Op. 07016 (4th Dep't Sept. 30, 2005) (reducing jury award from $375,000 to $250,000 for past pain and suffering, and from $1,000,000 to $250,000 for future pain and suffering); *Alvarado v. City of N.Y.*, 287 A.D.2d 296, 2001 N.Y. Slip Op. 07747 (1st Dep't Oct. 11, 2001) (reducing jury award from $900,000 to $250,000 for past pain and suffering, and from $400,000 to $150,000 for future pain and suffering); *Cunningham v. Q Plus Photo Corp.*, No. 017364/00, 2005 WL 2402636, N.Y. Jury Verdict Rev. & Analysis, Vol. 22, Issue 6 (N.Y. Sup. Ct., Bronx County, Jan. 2005) (awarding plaintiff $200,000 for past pain and suffering and $269,999 for future pain and suffering); *Li v. City of N.Y.*, No. 104445/99, 2003 WL 23854741, N.Y. Jury Verdict Rev. & Analysis, Vol. 21, Issue 3 (N.Y. Sup. Ct., New York

---

[5] The Court excluded the following cases from its consideration: *Archer v. Pro-Services Assoc.*, No. 017771/99, 2002 WL 1918808, N.Y. Jury Verdict Rep., Vol. XIX, Issue 50 (N.Y. Sup. Ct., Westchester County, Mar. 13, 2002) (awarding plaintiff $40,000 for past pain and suffering and $20,000 for future pain and suffering); *Costantino v. Yorkshire Towers Co.*, No. 108758/97, 1999 WL 33484343, N.Y. Jury Verdict Rep., Vol. XVI, Issue 49 (N.Y. Sup. Ct., New York County, Feb. 26, 1999) (awarding plaintiff $50,000 for past pain and suffering and $50,000 for future pain and suffering); and *Perez de Atoa v. City of N.Y.*, No. 21354/94, 2002 WL 31887352, N.Y. Jury Verdict Rep., Vol. XX, Issue 18 (N.Y. Sup. Ct., Bronx County, May 7, 2002) (awarding plaintiff $1,000,000 for past pain and suffering and $1,500,000 for future pain and suffering).

County, Oct. 10, 2003) (awarding plaintiff a total of $650,000 for past and future pain and suffering)[6]; *Kleinstein v. City of N.Y.*, No. 12567/94, 2002 WL 481059, N.Y. Jury Verdict Rep., Vol. XIX, Issue 33 (N.Y. Sup. Ct., New York County, Jan. 14, 2002) (awarding plaintiff $250,000 for past pain and suffering and $275,000 for future pain and suffering); *Sheppard v. City of N.Y.*, No. 101352/95, 1999 WL 33489212, N.Y. Jury Verdict Rep., Vol. XVII, Issue 9 (N.Y. Sup. Ct., New York County, July 8, 1999) (awarding plaintiff $175,000 for past pain and suffering and $600,000 for future pain and suffering); *Reynolds v. City of N.Y.*, No. 3100/90, 1996 WL 33343663, N.Y. Jury Verdict Rev. & Analysis, Vol. 13, Issue 12 (N.Y. Sup. Ct., New York County, Sept. 12, 1996) (awarding one plaintiff, who suffered knee injuries, $100,000 for past pain and suffering and $200,000 for future pain and suffering), *overturned on evidentiary grounds*, 254 A.D.2d 159, 1998 N.Y. Slip. Op. 09033 (1st Dep't Oct. 22, 1998); and *Hutcherson v. N.Y. City Housing Auth.*, No. 10710/94, 1996 WL 746696, JVR No. 188,725 (N.Y. Sup. Ct., Kings County, Oct. 1996) (reducing jury award from $500,000 for past pain and suffering and $300,000 for future pain and suffering to a total award of $350,000).[7]

Based on the damages specified in these cases, the Court attempted to arrive at an average figure for both past and future pain and suffering. The Court estimates that the average award for past pain and suffering in recent, similar cases has been $221,094 and that the average

---

[6] The jury verdict report for the *Li* case does not provide a breakdown as to how much of the plaintiff's damages were allocated for past versus future pain and suffering. For purposes of its own calculations, the Court assumes that $325,000 was awarded for each.

[7] In *Hutcherson,* the trial court reduced the jury's damages awards for past and future pain and suffering from $500,000 and $300,000, respectively, to a total award of $350,000, without explaining the breakdown. For its own calculations, this Court assumed that the ratio between the portions of that award remained constant, and thus assumed that the component of the award for past pain and suffering was $218,750, and that the component for future pain and suffering was $131,250.

award for future pain and suffering has been $15,901 per year,[8] for each year remaining in the plaintiff's expected life span.

"Although comparable approved awards from similar cases serve as guideposts for determining reasonable compensation under New York law, because each plaintiff's factual circumstances differ, present and future pain and suffering claims will be unique, thereby limiting the precedential value of similar cases." *Gottesman*, 2003 U.S. Dist. LEXIS 10429, at *5 (citing *Martello*, 748 F.2d at 750). In this case, it is reasonable to conclude that Plaintiff was subjected to considerable pain and suffering immediately after, and in the nine months following, her accident. During that time, Plaintiff underwent three surgical operations, was an in-patient at hospitals and rehabilitation clinics for approximately 30 days, and was apparently in severe pain, despite extensive pain therapy, for a substantial portion of that time. (*See* Proposed Findings ¶¶ 2-9; 2/12/05 Daub Aff. at 1-3; 2/10/05 Etkind Aff. at 2, 3; 2/17/05 Millon Aff. at 2 (citing Exs. C-G).) In light of these facts, and after consideration of the facts in similar cases, I recommend that Plaintiff be awarded $250,000 for past pain and suffering. Although this amount is somewhat higher than the average calculated by the Court, it is, as noted above, fairly typical for this type of injury, and the particular facts presented here – specifically including the

---

[8] To calculate the average amount awarded for future pain and suffering per year, the Court divided the total amount awarded each plaintiff for future pain and suffering by that plaintiffs' future life expectancy at the time of the verdict. Where plaintiffs' future life expectancy was not explicitly mentioned in the decision or the verdict report, the Court calculated the plaintiff's life expectancy by using a chart published by the United States Department of Health and Human Services. *See* 54 Nat'l Vital Stat. Rep. 14, Tbl. 2-3 (Apr. 19, 2006). In those cases where the plaintiff's age at verdict was not immediately apparent, *see Alvarado, Li, and Reynolds*, cited above, the Court used the best information available to determine plaintiffs' approximate age at verdict. The Court then calculated the average of these *per annum* awards.

fact that Plaintiff suffered some complications following her initial treatment – justify an upward adjustment.

As for Plaintiff's expected future pain and suffering, based on the Court's consideration of the evidence, including the sworn affidavit of a medical expert (Dr. Etkind), the Court finds that Plaintiff will continue to suffer, and that her life style has been partially impaired, due to her injury. Specifically, it appears that Plaintiff will live with persistent pain in her left knee, foot, and ankle. (*See* Proposed Findings ¶¶ 3, 8-11, 14-16; 2/12/05 Daub Aff. at 1-3; Etkind Aff. at 3, 5.) Plaintiff explains that she can no longer wear regular shoes and has difficulty walking, standing, and bending her left leg. (*See* Proposed Findings ¶¶ 11, 17; 2/12/05 Daub Aff. at 3; Etkind Aff. at 4-5.) As a result of these difficulties, Plaintiff does not go out as frequently as she did before her accident, and avoids going places that require too much walking. (*See* Proposed Findings ¶ 20; 2/12/05 Daub Aff. at 3.) Finally, according to the uncontested evidence, Plaintiff is developing post-traumatic arthritis in her left knee, and will likely require kneecap removal or replacement surgery in the future. (*See* Proposed Findings ¶¶ 10, 21; 2/12/05 Daub Aff. at 3; Etkind Aff. at 4, 5.)

Although awards for future pain and suffering should not be made purely on a "unit-of-time basis," *see Furey v. U.S.*, 458 F. Supp. 2d 48, 56 (N.D.N.Y. 2006) (noting that an award made on a unit-of-time basis "is at best an estimate" (citing *Paley v. Brust*, 21 A.D.2d 758, 758 (1st Dep't 1964))), where injuries or disabilities suffered are considered permanent, the period of time the plaintiff is expected to live should be taken into consideration when calculating damages for future pain and suffering, *see* N.Y. Pattern Jury Instr. § 2:281 (Dec. 2006) ("If you

15

find that the injuries or disabilities are permanent, you should take into consideration the period of time that the plaintiff can be expected to live.").

Plaintiff was 75 years old in November 2006, when Judge Lynch entered judgment in her favor in this case. (*See* 2/12/05 Daub Aff. at 1.) According to the United States Department of Health and Human Services (*see* chart referenced in n.8, *supra*), Plaintiff's life expectancy at that time was 12.5 years.[9] By simply applying the $15,901 average *per annum* award for future pain and suffering derived by the Court from similar cases, Plaintiff would be entitled to an award for her future pain and suffering of approximately $198,763. Yet, considering the significance of the impact that the injury is likely to have on Plaintiff throughout the duration of her life span, I recommend that this amount also be increased, and that she be awarded $250,000 for this component of her damages claim. An increase here is particularly warranted because of the likelihood that Plaintiff will require kneecap removal or replacement surgery in the future,

---

[9] The Court notes that Plaintiff, a longtime smoker, has suffered from various systemic medical problems, including peripheral vascular disease and chronic obstructive pulmonary disease. (*See, e.g.*, 2/17/05 Millon Aff., Ex. D (Englewood Hospital and Medical Center: Report of Operation, dated Mar. 20, 2002); *id.*, Ex. E (Kessler Institute for Rehabilitation: History & Physical Examination, dated Mar. 25, 2002 ("History & Physical Examination")).) There is no evidence in the record, however, indicating that these conditions would have a measurable effect on her future life expectancy. Nor is there evidence in the record suggesting that these conditions, which existed prior to Plaintiff's fall, themselves caused a loss of enjoyment of life. Indeed, according to her medical records, Plaintiff was independent in all activities of daily life and mobility, prior to her fall. (*See* 2/17/05 Millon Aff., Ex. E (History & Physical Examination).)

which will increase the amount of future pain and suffering she will endure beyond that of plaintiffs with similar injuries who did not require future operations.[10]

## CONCLUSION

For the foregoing reasons, I recommend that judgment for Plaintiff be entered against each Defendant, jointly and severally, in the total amount of $623,061.81.  Specifically, I recommend Plaintiff be awarded $108,061.81 for past medical expenses, $15,000 for future medical expenses, $250,000 for past pain and suffering, and $250,000 for future pain and suffering.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Gerard E. Lynch, United States Courthouse, 500 Pearl Street, Courtroom 68, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Lynch.  FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

---

[10] Of the eight cases considered by the Court in its calculations, only three involved plaintiffs who claimed to possibly need future knee replacement surgery as a result of their injury, *see Hoerner*, *Reynolds*, and *Sheppard*, cited above, and all three involved plaintiffs who were younger than Plaintiff, and thus less likely to face a difficult recovery from the anticipated operation.

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
July 26, 2007

Respectfully submitted,

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies To:

Hon. Gerard E. Lynch, U.S.D.J.

Steven E. Millon, Esq.
Maxwell S. Pfeifer, Esq.
714 East 241st Street
Bronx, NY 10470

Consulate General of the People's Republic of China
520 12th Avenue
New York, NY 10036

The Embassy of the People's Republic of China
2300 Connecticut Avenue, N.W.
Washington, DC 20008

David S. Jones, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007